**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No._____ Civ

District Judge_____

Honorable Magistrate Judge_____

JOHANNA MARIA VIBE ENER,

      Plaintiff,

v.

PEDRO ANTONIO MARTIN,

and

JOHN DOES, 1-10.

      Defendants.

_____/

FILED BY_____D.C.

APR 2 3 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## COMPLAINT WITH JURY DEMAND

I, JOHANNA MARIA VIBE ENER, Plaintiff, in the above styled cause, sue Defendants:
PEDRO ANTONIO MARTIN, and JOHN DOES, 1-10.

### Preliminary Statement

1.      This is an action by Plaintiff Johanna Maria Vibe Ener ("Ms. Vibe Ener"), against
Defendant Pedro Antonio Martin, ("Mr. Martin"), and Does 1-10 (collectively, "Defendants"),
seeking redress for the harm done to her, her family, her business and her business opportunities
as a result of Defendant's tortious conduct.  Defendant, Mr. Martin orchestrated an elaborate
concerted campaign to publicly defame and ruin his long-time girl-friend and Mother of his two
minor children, as a last-ditch effort to save his personal life, marriage and business reputation as
the founder of the multi-billion dollar real-estate empire, the Terra Group.

2.      Mr. Martin's unlawful conduct includes harassing and defaming Ms. Vibe Ener

Complaint

and her family members, perjuring himself to the courts and law enforcement, vexatious litigation, abuse of process, and breaching numerous contractual obligations to Ms. Vibe Ener in violation of the parties' binding agreements pertaining to their minor children, all of which has damaged Plaintiff in an amount to be determined at trial, but not less than Two Hundred Million Dollars ($200,000,000.00).

3.      This is also an action against Mr. Martin and Does 1-10 for defamation libel, defamation slander and invasion of privacy, as a result of Defendant's deceitful, scandalous and highly offensive statements made about Ms. Vibe Ener and disseminated to third parties including but not limited to the Miami Herald Media Company,  El Nuevo Miami Dade News Inc., The Real Deal, aka Korangy Publishing Inc., and Gossip Extra on or about May 10, 12  and September 22, of 2017.  Mr. Martin and Defendants Does 1-10 did so with requisite intent and for the purpose of preserving Mr. Martin' financial real estate empire, his marriage and ultimately to cover up a secret double life that he has been living with Ms. Vibe Ener for the past decade.

4.      Mr. Martin has continued to falsely and maliciously portray Ms. Vibe Ener as a dangerous criminal.  He has done so by intentionally smearing her name and disseminating false statements to media outlets and other third parties throughout Miami, Florida, and by filing frivolous petitions and perjurious legal proceedings filled with false testimony and outright lies against Ms. Vibe Ener.  All the while, Mr. Martin has been in constant and continuous contact with Ms. Vibe Ener, confessing his love for her and their minor children and blaming the legal prosecutions and attacks of Ms. Vibe Ener on his attorneys: Melissa Jacobs, Albert Caruana, The law firm of Coffey Burlington, and the attorneys for his wife: Victor Diaz of VM Dias and Partners and Attorney Benjamin H. Brodsky.

5.      In 2017, the legal harassment and abuse of process by Mr. Martin and his attorneys had become so severe that Ms. Vibe Ener was forced to leave her home in Miami under

Complaint

threats of death or bodily injury to her, her minor children, and her elderly mother.  At the time, Mr. Martin and his attorneys made several bogus criminal complaints against Ms. Vibe Ener, alleging she was stalking, harassing and attempting to extort Mr. Martin, thereby requesting restraining orders against her, and blocking her from accessing her own home which was located next to the Terra Group Headquarters and which was purchased for Ms. Vibe Ener by Mr. Martin.  The temporary orders and injunction have since been dismissed.

6.     On or about May 2017, Mr. Martin and his attorneys reported false and defamatory statements about Ms. Vibe Ener to multiple media outlets alleging Ms. Vibe Ener sent threatening messages to Mr. Martin, cyberstalked, harassed and attempted to extort money from him. Mr. Martin also falsely reported to the media and other third parties that Ms. Vibe Ener was an exotic dancer and that he needed to undergo paternity testing in order to make certain their minor children were actually his.

7.     As a result of Mr. Martin's actions including defamation, invasion of privacy, abuse of process, civil conspiracy, breach of contract and intentional infliction of emotional distress, Ms. Vibe Ener has suffered damages which include physical injury, physical pain and suffering, mental anguish and distress, humiliation, embarrassment, damage to reputation, loss of income and lost business opportunities for her and her minor children.

8.     As a result of Mr. Martin's defamatory statements about Ms. Vibe Ener, her reputation in her community, her reputation as a mother of her minor children, her personal life and her career have been devastated. Furthermore, major relationships and business opportunities, that were otherwise available to her, have been lost and/or substantially negatively impacted.

9.     As a result of Defendant's malicious conduct which was intended to cause injury to Ms. Vibe Ener and was despicable conduct carried on with a willful and conscious disregard of

the rights, reputation and safety of Ms. Vibe Ener and the safety of her minor children and family, Ms. Vibe Ener is entitled to recover punitive and exemplary damages in an amount to punish Defendants deter them from such egregious and reprehensible conduct in the future.

### The Parties

10.    Plaintiff Ms. Vibe Ener is a citizen of Finland, currently residing in the United Kingdom.

11.    Defendant Mr. Martin is and at all relevant time was a resident citizen of Miami Florida, USA. He is deemed a citizen of Florida for purposes of 28 U.S.C. § 1332(c).

12.    Ms. Vibe Ener is unaware, at this time of some the true names of the defendants sued herein as Does 1-10, and therefore sues said defendants by such fictitious names. Ms. Vibe Ener will amend this complaint to allege their true names when the same have been ascertained. Ms. Vibe Ener is informed and believes and thereon alleges that each of the fictitiously-named defendants is responsible in some manner for the occurrences herein alleged, and that Ms. Vibe Ener's damages herein alleged were proximately caused by such Doe defendants.

13.    Ms. Vibe Ener alleges on information and belief that each of the defendants was the agent of each of the others, and committed the acts or omissions alleged herein on behalf of each of the other defendants and, at all times relevant herein, acted within the course and scope of such agency or employment.

### Jurisdiction and Venue

14.    This Court has jurisdiction over Defendants pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of citizenship and on the supplemental jurisdiction of this court to entertain claims arising under state law pursuant to 28 U.S.C. §1367.

15.    The amount in controversy, without interest and costs, exceeds $75,000.00.

Complaint

16.     Venue is proper in this district pursuant to 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to this claim occurred in this district.

## Factual Allegations

### Background Facts

17.     In September 2009, the Defendant Mr. Martin met Plaintiff Ms. Vibe Ener in New York City.  Mr. Martin was smitten with Ms. Vibe Ener and immediately started aggressively pursuing a relationship with her.  Mr. Martin told Ms. Vibe Ener that he was a widow, and asked her to be his girlfriend and to get married in the future.

18.     Mr. Martin offered to move Ms. Vibe Ener and her then nine-year-old son, and her mother to Miami, Florida to live near him and to get her an investor's visa to immigrate permanently to the United States.

19.     Shortly thereafter, Ms. Vibe Ener and her son and mother relocated to Miami.  Mr. Martin arranged for the investor's visa and purchased several multi-million-dollar properties for Ms. Vibe Ener, with one located next to the Terra Group's Official Headquarters in Miami where the parties could live together and spend much of their time.

20.     Mr. Martin also treated Ms. Vibe Ener's, then ten-year-old son as if he was his own child and told her son he would adopt him.  Mr. Martin also enrolled the son in a private Miami school and paid for his tuition for 7 years, and until 2017 when Mr. Martin's family discovered he was paying the tuition at which point, Mr. Martin's family proceeded to persuade the school to expel the minor child.  In the process of doing so, the minor child was harassed, treated extremely unfairly and was bullied and intimidated, thereby causing injury to his character, reputation, relationships and future opportunities.

21.     Soon after relocating to Miami, Ms. Vibe Ener started to receive phone calls from a blocked phone number or visible numbers from a woman screaming "*F\*\*k you bitch you will*

Complaint

*die!*" Ms. Vibe Ener asked Mr. Martin if he knew who was calling her. It was at this point, Ms. Vibe Ener first learned from Mr. Martin that he was in fact married and had adult children; however, Mr. Martin claimed that he was separated from his wife, who was a mentally ill and a dangerous woman residing in a state mental health treatment facility. Mr. Martin told Ms. Vibe Ener that he had hired attorneys to handle his divorce from the wife and the divorce papers would be filed soon. Ms. Vibe Ener, in love, believed Mr. Marin, especially when he told her soon thereafter that he wanted to have a baby with her.

22.     Shortly thereafter, the parties had two minor children together. Ms. Vibe Ener became pregnant with their first child and in the summer of 2010, and then again in the summer of 2012. It was at this point that the death threats and harassment from Mr. Martin's family and lawyers began. For example, when Ms. Vibe Ener was in her third trimester, out of the blue, Mr. Martin said that his wife had learned that Ms. Vibe Ener was pregnant, and that his wife was very upset, and that she wanted to offer Ms. Vibe Ener five hundred thousand dollars ($500,000.00), or more to abort the child, despite Ms. Vibe Ener being in her third trimester. Mr. Martin insisted that Ms. Vibe Ener should consider the wife's offer to abort the seven-month-old fetus or else the wife could harm Ms. Vibe Ener or the baby. Ms. Vibe Ener was disgusted and refused.

23.     From that point on, Ms. Vibe Ener started to receive "hate" e-mails and threats from Mr. Martin's attorneys, telling her to stay away from Mr. Martin or they would seek legal action against her including taking her children away forever. Ms. Vibe Ener also received anonymous phone calls threatening her life and the lives of her children. Meanwhile, Mr. Martin would call Ms. Vibe Ener from a burner phone and tell her how much he loved her and that he had to have his family lawyers send those e-mails in order to calm down his wife and adult children.

24.     In 2015, Mr. Martin gave Ms. Vibe-Ener a One Hundred Thousand Dollar

Complaint

($100,000.00) engagement ring and had a spiritual wedding ceremony with her, promising her a civil union in the near future.  Around this same time, Mr. Martin also purchased an apartment for Ms. Vibe-Ener and the minor children next to his business headquarters The Terra Group, so that he could secretly spend time with and see Ms. Vibe-Ener and the children whenever he wanted without his wife and family knowing.

25.     After the engagement, Ms. Vibe Ener suffered from an 18-millimeter herniation at the base of her spine resulting in having to undergo major surgery which left her bed ridden for nearly two (2) years. Ms. Vibe Ener spent nearly two years lying in bed in her apartment located next to the Terra Group headquarters.  Even after all of this, Mr. Martin still insisted that the parties have a third child together. The parties attempted to get pregnant during this time but were unsuccessful. Mr. Martin expressed his intention very clearly to have a third child with Ms. Vibe-Ener and in fact collected six (6) vials of his sperm at the Ms. Vibe-Ener's residence and together they shipped them to a cryo-clinic where he paid for Ms. Vibe-Ener to start fertility treatments to start the process for a third child through invitro fertilization.

### Facts and Specific Allegations Regarding Defendant's Breach of The Paternity Settlement Agreements

26.     Due to the parties' tumultuous relationship as a result of the volatile situation with Mr. Martin's wife and family, the parties entered into multiple binding agreements including two separate paternity agreements, a modification of same, a supplemental agreement and several other side agreements in their efforts to settle and resolve all issues of parental responsibility, contact and access, child support, maintenance, the security of the minor children's financial future, Ms. Ener's financial security, attorney fees and any and all financial claims or demands of any nature between the parties.

27.     On December 16, 2011, after the birth of their first child, the parties entered into

their first Settlement Agreement, (hereinafter "Settlement Agreement 1"). Again, on November 1, 2013, after the birth of their second child, the parties entered into a second Settlement Agreement, (hereinafter "Settlement Agreement 2"). (A true copy of the December 16, 2011, and the November 1, 2013 Settlement Agreements are attached hereto and incorporated herein by reference as **Exhibit A and Exhibit B** respectively).

28.     The parties also simultaneously entered into a third agreement on November 1, 2013, which modified Settlement Agreement 1, (hereinafter "Modification Agreement"). (a true copy of the November 1, 2013 Modification Agreement is attached hereto and incorporated by reference as **Exhibit C).**

29.     Mr. Martin breached Settlement Agreement 2 and the Modification Agreement by failing to provide the three million-dollar ($3,000,000.00) life insurance policies for each of the minor children and by breaching the confidentiality clauses of each of these Agreements.

30.     Defendant Mr. Martin breached Settlement Agreement 2 and the Modification Agreement by failing to comply with his obligations pursuant to the *Security for Child Support* provisions as designated in 9(F) and 8 (F) of the Settlement Agreement 2 and the Modification Agreement respectively. Pursuant to provision 8 (F) and 9(F), Mr. Martin is *"obliged to maintain a life insurance policy in the amount of Three Million Dollars ($3,000,000.00), naming the Mother as trustee and the child as irrevocable beneficiary as security for his child support obligation."*

31.     Upon information and belief, Mr. Martin failed to maintain said life insurance policies in the amount of Six Million Dollars ($6,000,000.00), and has refused to provide evidence to the contrary. In early 2015 Mr. Martin was diagnosed with cancer. Mr. Martin told Ms. Vibe Ener of his cancer and that it had metastasized. After learning of his illness and its severity, Ms. Vibe Ener was naturally concerned for Mr. Marin and the stability of her family.

Complaint

32.     Shortly thereafter, Ms. Vibe Ener proceeded to request information regarding the life insurance policies for the minor children, however Mr. Martin and his lawyers provided policy numbers that were non-identifiable by the insurance company. Ms. Vibe Ener requested information from Mr. Martin and his attorneys regarding the policies several times in 2017 and again in 2018 but to no avail. Despite numerous requests for this information, Mr. Martin and his attorneys failed to provide this information to Ms. Vibe Ener.

33.     Furthermore, Mr. Martin breached Provisions 13 and 14 of Settlement Agreement 2 and the Modification Agreement regarding the _Confidentiality_ of private information related to the parties and their minor children.  Provisions 13 and 14 of the respective Agreements state in pertinent part: _"Neither party may discuss or provide to third parties regarding the other parties' business affairs or financial affairs with or to any third parties, including, but not limited to, the terms of the Agreement or any documents that were filed provided to either side; provided that either party may disclose such information to any court or any regulatory authority if legally required to do so provided further such party must promptly notify the other party of the request for such information by such court or regulatory authority and shall cooperate with the other party to seek to obtain an appropriate protective order or otherwise to preserve the confidentiality of such information to the greatest extent possible."_

34.     Mr. Martin breached Provisions 13 and 14 of said Agreements by intentionally, recklessly and willfully disseminating Ms. Vibe Ener's financial information and other private, personal and business-related information to third parties including, but not limited to multiple media outlets such as the Miami Herald Media Company,  ("Miami Herald), El Nuevo Miami Dade News Inc., ("El Nuevo), The Real Deal, aka Korangy Publishing Inc., ("The Real Deal") and Gossip Extra on or about May 10, and September 22, of 2017.   Specifically, Mr. Martin stated in the Miami publication (The Miami Herald) that _"I pay Johanna twenty thousand euros (_

*$20,000.00) per month in child support plus ten thousand ($10,000.00) a month in credit cards for the children's expenses."* Mr. Martin also disclosed to third parties that Ms. Vibe Ener drives a Bentley and lives in a luxury condominium in Key Biscayne that was fully paid by him.

35.    As a result of Mr. Martin's breach in maintaining life insurance policies in the required amount in order to secure child support for the minor children, as well as Mr. Martin's unauthorized dissemination of Ms. Vibe Ener's confidential and private information, Ms. Vibe Ener has suffered damages and continues to suffer damages in an amount to be proven but no less than One Hundred Million Dollars ($100,000,000.00).

### Facts and Specific Allegations Regarding Defendant's Breach of The First Supplemental Agreement

36.    On or about November 1, 2013, the parties, independently, without the assistance of their respective attorneys, entered into a First Supplemental Agreement, (hereinafter "First Supplemental Agreement") in order to finalize the previous Paternity Settlement Agreements 1 and 2 and Modification Agreement. (A true copy of the November 1, 2013 First Supplemental Agreement is attached hereto and incorporated herein by reference as **Exhibit D).**

37.    The First Supplemental Agreement not only finalized the previous three agreements, but also provided an emphasis on the safety and welfare of the minor children. The First Supplemental Agreement was made with the intent of protecting the physical, emotional and psychological health of the minor children. In doing so, the parties set forth terms restricting Mr. Martin's time share with the minor children and permitting Ms. Vibe Ener to monitor Mr. Martin's parenting time in her efforts to protect the minor children to possible damage that could be fair to expect in light of the prior extreme reactionary behaviors by Mr. Martin's wife, Mr. Martin's resulting legal abuse of Ms. Vibe Ener and the negative impact of such actions on the children.

38.    The First Supplemental Agreement states in pertinent part: *"Pedro Marin agrees he will never in any circumstance now or in the future expose ... and ...[names of the minor children redacted] to his current wife Maria or their children or their relatives. Pedro agrees he will never bring ... and ...[names of the minor children redacted] to his marital homes with his current wife or any homes, properties, automobiles, boats where ... and ...[names of the minor children redacted] could be exposed to his current wife or their children or their relatives."* (Brackets added). In other words, according to this Agreement, Mr. Martin was strictly prohibited from exposing the minor children to Mr. Martin's other adult children and Mr. Martin's wife.

39.    This First Supplemental Agreement also set forth the damage remedy should Defendant Mr. Martin breach this Agreement. The provision states in pertinent part: *"In a (sic) event of breaching this agreement Pedro shall pay Johanna Five Hundred Thousand Dollars, ($500,000.00) each time plus reasonable legal fees. Johanna has also right to immediately remove or call the law enforcement or safety guards to remove ... or ... [names of the minor children redacted] with an event they are exposed to Pedro's current wife Maria or Pedro's and Maria's children or their relatives".* (Brackets and emphasis added).

40.    On information and belief, Mr. Martin breached the First Supplemental Agreement at least three different times in 2017, introducing and exposing the minor children to his wife and adult children: 1) On or about **February 26, 2017**, Mr. Martin exposed the children to his wife, who assaulted one of the children with scissors as she threatened to cut their hair. On information and belief, Mr. Martin's wife also made derogatory comments about Ms. Vibe Ener to the minor children. This abhorrent behavior frightened the minor children, causing them substantial trauma and worry; 2) Then again, on or about **March 2, 2017**, Mr. Martin, accompanied by his wife, took the minor children to a coffee shop, where his wife burned the arm of the then 6-year old minor child with scalding hot coffee.  Mr. Martin's wife then further

Complaint

frightened the minor child by stating to her that she was supposed to be aborted, but that her mothers had wanted more money to have the procedure done; and 3) Yet another breach of this First Supplemental Agreement occurred on or about **May 16, 2017.** On this visit, Mr. Martin picked up the minor children accompanied by his adult son, David. The minor children returned home to report that they met their new brother, **age 40** and that he had said very bad things about their mother. Ms. Vibe Ener's mother was also present during this visit and witnessed the interaction between the children and Mr. Martin's son David. The children had been confused and extremely stressed by the experience and continue to suffer from the trauma resulting from the visit to this day.

41.     As a direct and proximate result of Mr. Martin's intentional, malicious and willful breach of his obligations under this First Supplemental Agreement, Ms. Vibe Ener has been damaged and is entitled to an amount pursuant to the contract in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) or Five Hundred Thousand Dollars for each separate breach.

### Facts and Specific Allegations Regarding Defendant's Breach of Supplemental Settlement Agreement to Establish a Trust for the Plaintiff and Minor Children

42.     On November 18, 2014, the parties, independently, without the assistance of their respective attorneys, entered into a Supplemental Settlement Agreement (hereinafter "Supplemental Trust Agreement"), in order to finalize all previous Agreements and establish a Trust for the Minor Children and the Plaintiff. (A true copy of the Second Supplement Agreement is attached hereto and incorporated herein as **Exhibit E).**

43.     This Supplement Agreement to establish a Trust states that the parties stipulate and agree that Mr. Martin "*agrees to establish an Irrevocable Trust to secure the financial future and care of the minor children and Plaintiff*". In addition, the Agreement states that "*Mr.*

Complaint

*Martin shall transfer sixty million dollars ($60,000,000.00) into the Trust and deliver the Trust Deed/Trust Agreement to Ms. Vibe Ener no later than December 31, 2016.*" The Agreement also stipulated that should Mr. Martin fail to do so by December 31, 2016, he shall instead transfer the sixty million dollars ($60,000,000,00) directly to Ms. Vibe Ener.

44.     Defendant Mr. Martin failed to execute his obligations under the November 18, 2014 Agreement to Establish the Trust.   Further, Mr. Martin failed to deliver the Trust Agreement/Deed of Trust to Ms. Vibe Ener by the stipulated deadline.   Even further, Mr. Martin has also failed to directly transfer the specified sixty million dollars ($60,000,000.00) to Ms. Vibe Ener after the December 31, 2016 deadline.   Mr. Martin has also failed to make any reasonable effort to fulfill his contractual obligations to Ms. Vibe Ener and has failed to provide any explanation as to why his obligations have not been met to date.

45.     As a direct and proximate result of Mr. Martin's breach of the Supplemental Agreement, Ms. Vibe Ener has suffered damages and continues to suffer damages in an amount to be proven but no less than Sixty Million Dollars **($60,000,000.00),** indicative of the specific amount provided in the Supplemental Settlement Agreement to Establish the Trust.

### Factual Allegations Regarding Defendant's Continuing Abuse of Process, Harassment and Vexatious Litigation

46.     Ms. Vibe Ener has continued to suffer severe emotional abuse from Mr. Martin's abusive conduct throughout their relationship.   Whenever Mr. Martin would get worried that someone would find out about their relationship, he would always warn Ms. Vibe Ener to hide the kids and their relationship. He relentlessly threatened Ms. Vibe Ener that if she did not follow his command, he or his family would pay the lawyers to come after her again, in such a manner as setting her up for a crime she didn't commit, taking the children from her, paying off doctors to make her look mentally unstable or using their connections to deport her.   Mr. Martin's

Complaint

outrageous warnings and threats caused Ms. Vibe Ener extreme emotional distress and to fear for her safety and the safety of her minor children and elderly mother.

47.     On April 4, 2017, Mr. Martin filed a fabricated Petition for Injunction Against Stalking and a Request for Temporary Injunction against Ms. Vibe Ener, which the court granted. Mr. Martin did so while simultaneously attempting to maintain his relationship with the Ms. Vibe Ener, calling her up to 10 times daily, while blaming his attorneys for the aggressive attack. Meanwhile, it was Mr. Martin to call, text, and profess his love for Ms. Vibe Ener and their minor children, contrary to what his attorneys were pleading in his petitions to the court and contrary to reports made by Mr. Martin to law enforcement and the media.

48.     From this point on, Mr. Martin and his attorneys went all out, and aggressively pursued attacking Ms. Vibe Ener on all fronts including her private and public life, her role as a mother, a women and businessperson. Mr. Martin exposed all of Ms. Vibe Ener's private information in violation of the parties' contractual agreements, including financial details related to her and her minor children, all of which was strictly forbidden according to the contracts the parties entered into. Nonetheless, Mr. Martin proceeded to breach the parties' agreements.

49.     Mr. Martin and his attorneys also filed numerous sham pleadings including an Urgent Motion for the Appointment of Guardian Ad Litem and for Order Requiring Use of Our Family Wizard, dated April 12, 2107, as well as a Motion to Compel Mediation, all of which has still not been properly served upon Ms. Vibe Ener to date. The Motions contained lie after lie portraying Ms. Vibe Ener in a false and inaccurate light, defaming her as a mother, woman and member of society.  Even further, on September 4, 2018, Mr. Martin continued to file frivolous and vexatious Motions in the Miami Dade Court. This time Mr. Martin filed a Motion to Vacate Orders and Discharge Guardian Ad Litem, requesting the Court to dismiss all matters previously brought by him.  On information and belief, Mr. Martin did so in an attempt to lure Ms. Vibe

Complaint

Ener back into Miami to further harass and terrorize her. Shortly thereafter, Mr. Martin and his attorneys filed a Motion to Withdraw Same, relinquishing his early request to Vacate all the orders and cases against Ms. Vibe Ener, thereby exhibiting his very frivolous, vacillating and unreasonable behavior.

50.     Ms. Vibe Ener's emotional distress caused by Mr. Martin, his lawyers and his wife and her lawyers has been well-founded. From Mr. Martin's wife's death threats directed at Ms. Vibe Ener and her children to Mr. Martin and his wife hiring third parties to follow Ms. Vibe Ener and threaten her with weapons, including knives and guns, and verbally threatening her to stay away from Mr. Martin, Ms. Vibe Ener has suffered and continues to suffer severe emotional distress and trauma. Ms. Vibe Ener has done her best to protect herself and her family by seeking protective orders and filing multiple police reports, including a May 9, 2017, Village of Key Biscayne Police Report documenting the threats of assault and damage to her property. The harassment and threats on her life and the lives of her minor children and loved ones took such monstrous forms that Ms. Vibe Ener saw no other way in which to maintain safety for herself, her children and her mother than to leave her home and life in Miami, Florida.

**Factual Allegations Regarding Defamation (Libel and Slander) and Invasion of Privacy**

51.     On or about May 10, 2017, Mr. Martin, proceeded to disseminate defamatory statements and a false narrative of his relationship with Ms. Vibe Ener to his Cuban friends at The Miami Herald, The Real Deal and to other third parties, thereby casting Plaintiff in a false light and devastating her reputation in the Miami community.

52.     On or about May 10, 2017, Mr. Martin and his lawyers teamed up and arranged press conferences with multiple media outlets in Miami which have historically had a very close relationship with Mr. Martin and The Terra Group, and all of which have links to the Cuban

mafia. The defamatory newspaper reports were published by multiple media sites, platforms and newspapers on May 10, 2017, May 11, 2017, September 22, 2017, and November 23, 2017 and had a chain reaction across the globe. The defamatory stories criminalized and demoralized Ms. Vibe Ener, calling her a "*mistress*" who "*cyberstalked and tried to shake him down.*" Mr. Martin falsely stated that Ms. Vibe Ener was "*engaged in a relentless barrage of texts, emails and phone calls that are harassing and threatening in nature,*" and further stated that Ms. Vibe Ener was "*threatening his life and the lives of his loved ones*". Mr. Martin also deliberately and in utter disregard of the truth, stated that Ms. Vibe Ener acted in such a way because of Martin's refusal to pay "*large sums of money.*"

53.     On or about May 10, 2017, Mr. Martin disseminated false and defamatory statements about Ms. Vibe Ener to The Miami Herald. The media outlet ran the story both in its newspaper and on-line. The article was entitled: "*Miami developer claims mistress cyberstalked him and tried to shake him down.*"

54.     The article portrays Ms. Vibe Ener as a sleazy criminal and states that she was "*engaged in a relentless barrage of texts, emails and phone calls that are harassing and threatening in nature*" because of Mr. Martin's refusal to pay "*large sums of money for herself,*" and "*at one point, she sought as much as $5 million*".

55.     According to the article, Mr. Martin claimed that the threatening text messages sent by Ms. Vibe Ener included warnings such as: "*I'll burn u [sic] in hell*" and death threats. On March 30th alone, Martin alleged that he received more than 200 text messages from Vibe Ener.  Mr. Martin also reported that he "*suspects her of sending anonymous poison-pen emails to his business associates.*" In addition, the article credits Mr. Martin as saying that: "*While I have always considered this to be a personal and private matter within my immediate family, I had no choice but to pursue legal action to stop threats directed at me and my loved ones. In*

Complaint

16

*doing so, I have tried to protect the privacy of my wife, all my children and my family. In their defense, I will do anything — including suffering any indignation that may be directed at me if necessary — to stop anyone from threatening me or them in hopes that I will cower to unlawful demands. And while I have always considered this to be a personal and private matter within my immediate family, I had no choice but to pursue legal action to stop threats directed at me and my loved ones.*" (A copy of the news article as a whole is attached hereto as **Exhibit F** and made a part hereof by reference).

56.     The article is false and misleading and fails to mention that during the time that Mr. Martin made these false accusations and statements to the Miami Herald and other media outlets, he was contacting Ms. Vibe Ener on almost a daily basis and actively professing his love for her and the minor children.

57.     The same day, on or about May 10, 2017, another news report surfaced after a news conference with Mr. Martin and his lawyers.  Based on Mr. Martin's false narrative about Ms. Vibe Ener and his relationship with her, The Real Deal, South Florida Real Estate News, published the article entitled: "*Developer Pedro Martin wins restraining order against his mistress, claiming cyberstalking and extortion.*" The article stated in pertinent part:

> a.   "*Miami developer Pedro Martin has gone to court with details of his relationship with his on-again, off-again mistress, a 40-year-old Finland-born model, and won a temporary restraining order against her… Martin, chairman and founder of Terra Group, has two young daughters with Johanna Vibe Ener. The affair dates back to at least 2011 but became public record once he filed for a domestic violence injunction April 4.   In 2011 and 2013, Martin legally secured paternity of his daughters and agreed to support them financially. Vibe Ener lives in a $3 million condo in Key Biscayne, and drives a Mercedes SUV and a Bentley, according to the Herald.*
>
> b.   *Pedro Martin said he "had no choice but to pursue legal action" to stop threats directed at him and his family, adding that, "In their defense, I will do anything — including suffering any indignation that may be directed at me if necessary — to stop anyone from threatening*

Complaint

*me or them in hopes that I will cower to unlawful demands."*

   c.  *Martin alleges Vibe Ener "engaged in a relentless barrage of texts, emails and phone calls that are harassing and threatening in nature" because the developer refused to pay up. Text messages included in the court documents threatened Martin."*

(A copy of the news article as a whole is attached hereto as **Exhibit G** and made a part hereof by reference).

     58.     On September 22, 2017, the Miami Herald featured a second defamatory article entitled *"Developer Pedro Martin buys luxury condo in the Grove."* The article states in pertinent part:

   a.  *"Developer Pedro Martin, who's fighting in court a former mistress who he claims is trying to extort him, has just spent $4 million on a luxury condo for himself and his wife of 40 years, according to real estate records....Pedro Martin made news earlier this year when he petitioned a Miami-Dade County court for an injunction against a mistress 27 years his junior, model Johanna Vibe Ener.*

   b.  *Martin accused Vibe Ener of trying to extort him to the tune of $5 million, cyberstalking and harassment. The detailed court action showed Vibe Ener had two children with Martin since they first met in New York City in 2009.*

   c.  *Martin wants a permanent injunction that would prevent her from reaching out to him and trying to meet him, and the case is still snaking its way through the court system."*

(A copy of the news article as a whole is attached hereto as **Exhibit H** and made a part hereof by reference).

     59.     The above publications caused Ms. Vibe Ener to be inundated with numerous telephone calls by various and sundry individuals, seeking to alternately console, chastise, proposition, or berate her, and for which she has suffered severe mental pain and anguish, as further detailed herein.

Complaint

60.     The publications were an absolute unwarranted invasion of Ms. Vibe Ener's privacy and right to be free from unwarranted publicity, and to be protected from a wrongful and unlawful intrusion into her life, which, altogether, has outraged her and caused her severe mental suffering, shame, and humiliation

61.     The articles as a whole, were published without Ms. Vibe Ener's knowledge, authority, or consent, and in complete and utter disregard of its obviously harmful effects on Ms. Vibe Ener and her minor children and family. When contacted for comment, Miami Herald and The Real Deal refused to meet with or accept comment by Ms. Vibe Ener or her representatives, but relied on partial comments made to them by Mr. Martin and other third-party sources.

62.     On or about June 2017, the relentless attack of terrorism by Mr. Martin, his lawyers and the lawyers of his wife became so severe, that Ms. Vibe Ener had no other choice but to relocate from Miami permanently.  To date, Mr. Martin and his attorneys continue to perjure themselves, perpetrate fraud upon the Court, report false accusations concerning Ms. Vibe Ener to law enforcement, and continue to file and withdraw frivolous motions, in bad faith against Ms. Vibe Ener, whereby creating a greater burden and stress upon Ms. Vibe Ener, her minor children and her loved ones, while Mr. Martin calls Ms. Vibe Ener up to 10 times per day, confessing his unending love for her and his plan to be with her and divorce from his wife.

63.     Even further, Mr. Martin's multiple breaches of the parties' Agreements have jeopardized the safety, and wellbeing of Ms. Vibe Ener and the minor children and have caused them to be in a state of devastation and distress. Opportunities for their current and future welfare and benefit have been compromised and or eliminated indefinitely. The children's emotional distress is also well founded and their father's deliberate tortious conduct directed against their mother continues to haunt them to this day and have caused adverse childhood experiences that will remain with them for many years to come.

Complaint

64.     As a proximate result of Mr. Martin's wrongful conduct, Ms. Vibe Ener has suffered and will suffer harm, including, but not limited to, harm to her person, business, profession, and or occupation, expenses paid by Ms. Vibe Ener, harm to her reputation and shame, mortification and hurt feelings, in addition to that assumed by law in an amount to be proven at trial.

65.     On information and belief, Mr. Martin knew the harm and devastation his actions and defamation would have on Ms. Vibe Ener and his minor children, yet acted with reckless disregard when conducting himself in such a reckless manner and in disseminating his false statements to third parties and media outlets.

66.     Mr. Martin's malicious conduct was intended to cause injury to Ms. Vibe Ener and was despicable conduct carried on with a willful and conscious disregard of the rights, reputation and safety of Ms. Vibe Ener and the safety of her minor children and family. As such, Ms. Vibe Ener is entitled to recover punitive and exemplary damages in an amount to punish Defendant Mr. Martin and deter him from such egregious and reprehensible conduct in the future.

67.     As a proximate result of the above described conduct and defamatory statements, Ms. Vibe Ener has suffered and continues to suffer irreparable harm and is therefore entitled to injunctive relief in order to be fully compensated for her continuing injuries.

### COUNT I

### DEFAMATION  (Libel and Slander)

### (as to Defendant Pedro Antonio Martin and Does 1-10)

68.     The allegations common to all counts above are hereby incorporated herein by this reference.

69.     Mr. Martin's and Defendants' statements, as more fully set forth herein, were defamatory.

Complaint

70.     Such statements were false in that they stated that Ms. Vibe Ener committed criminal actions, and engaged in criminal activity including extortion, stalking, and harassment.

71.     Such statements were false in that they asserted Ms. Vibe Ener to be an unchaste woman who has acted promiscuously.

72.     Such statements falsely asserted that Ms. Vibe Ener was an exotic dancer and mistress and that Defendant Mr. Martin needed a DNA test to prove that he was in fact the father.

73.     Such statements impute that Ms. Vibe Ener possesses an unfit character and has acted promiscuously.

74.     Mr. Martin and Defendants knew that such statements were false when he made them.

75.     Mr. Martin and Defendants published such comments in that they were made publicly to several media outlets including The Real Deal Miami, The Miami Herald, Gossip Extra, and El Nuevo Miami Dade News Inc., amongst other media outlets and third parties.

76.     Mr. Martin and Defendants published such comments in that they were made publicly in newspaper articles and on social media.

77.     The recipients of the statements understood the statements made in the reports were about Ms. Vibe Ener.

78.     Ms. Vibe Ener's reputation has been damaged as a result of Defendant's false statements.

79.     The Defendants' actions were done willfully, intentionally, maliciously, outrageously, and with disregard for Mr. Vibe Ener's rights.

80.     As a direct and proximate result of Defendant's Defamation as set forth above, Ms. Vibe Ener has been injured and has sustained damages in an amount to be determined at trial.

Complaint

## COUNT II

### INVASION OF PRIVACY

**(as to Defendant Pedro Antonio Martin and Does 1-10)**

81.    The allegations common to all counts above are hereby incorporated herein by this reference.

82.    Mr. Martin and Defendants intentionally intruded upon Ms. Vibe Ener's solitude, seclusion or private affairs and concerns. Defendants' intrusion would be highly offensive to a reasonable person and was unwarranted and unjustified.

83.    Specifically, Mr. Martin and Defendants hacked Ms. Vibe Ener's computers, emails, and cell phones and accessed and disseminated Ms. Vibe Ener's personal information without authorization. Mr. Martin and Defendants illegally obtained personal and private information that they later gave to The Miami Herald, The Real Deal and other third-party media outlets and which were used against Ms. Vibe Ener to cast her in a false light and in order to protect Mr. Martin's legal and financial interests.

84.    Moreover, the words as reported and published with their normal meaning, with all reasonable interpretation denoted and connoted thereto, and with the innuendo drawn thereby, were and are false, malicious, defamatory, and libelous. Not only were these words published without regard for the consequent scorn, ridicule, contempt, and disrespect that they would bring to Ms. Vibe Ener in the eyes of the public, as well as Ms. Vibe Ener's friends, neighbors, family, and minor children, but they were published in absolute disregard of Florida Law.

85.    The publications were an absolutely unwarranted invasion of Ms. Vibe Ener's privacy and right to be free from unwarranted publicity, and to be protected from a wrongful and unlawful intrusion into her life, which, altogether, has outraged her and caused her severe mental suffering, shame, and humiliation.

Complaint

86.    Mr. Martin and Defendants invaded Ms. Vibe Ener's privacy, with the purpose of saving their own reputation and  Mr. Martin's billon dollar financial empire, all at the expense of Ms. Vibe Ener and the parties' minor children.  As a result, Ms. Vibe Ener suffered injury as a proximate cause of such intrusion.

87.    This defamatory and unwarranted publication has caused serious and permanent mental, emotional and physical injury to Ms. Vibe Ener, as well as an exaggeration of a preexisting physical illness, all of which have occasioned and will occasion medical expenses, and all of which have caused Ms. Vibe Ener to be ridiculed and regarded with contempt by her family, friends and acquaintances.

88.    This defamatory and unwarranted publication has also outraged, shamed, and humiliated Ms. Vibe Ener, prevented her from returning to Miami, carrying on in her profession, prevented her from receiving present and future earnings, and caused her severe mental anguish. Ms. Vibe Ener is entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## COUNT III

### BREACH OF CONTRACT

### (as to Defendant Pedro Antonio Martin)

89.    The allegations common to all counts above are hereby incorporated herein by this reference.

90.    During their time together and in light of the hostile situation with Mr. Martin's wife and adult son, the parties mutually entered into multiple contracts including the parties' Settlement Agreements 1 and 2, the Modification Agreement and the parties' First and Second Supplemental Agreements.  As stated above, the parties entered  into the following Agreements of which Defendant is in breach.

Complaint

91.     Ms. Vibe Ener and Mr. Martin are parties to the written and executed Agreements mentioned in detail herein and attached hereto as **Exhibit A, B, C, D and E.**

92.     The written Agreements are valid and enforceable.

93.     Ms. Vibe Ener performed all of her contractual obligations according to the Agreements.

94.     Mr. Martin, however, breached several of his obligations under the Agreements as set forth and further alleged herein.

95.     As a direct and proximate result of Mr. Martin's breach of the Agreements as set forth herein, Ms. Vibe Ener has been injured and has sustained damages in an amount to be determined at trial, but not less than the agreed-upon damages of Sixty-Seven Million, Five-Hundred Thousand Dollars ($67,500,000.00).

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (as to Defendant Pedro Antonio Martin and Does 1-10)

96.     The allegations common to all counts above are hereby incorporated herein by this reference.

97.     Defendants' actions were extreme and outrageous beyond all bounds of decency so as to be deemed utterly intolerable in a civilized community and Mr. Martin and Defendants intentionally or recklessly caused the Ms. Vibe Ener to suffer severe emotional distress. The recitation of the Defendants' actions will arouse resentment in an average member of the community and cause her to exclaim "outrageous." These acts terrorized Ms. Vibe Ener, her minor children and family.

98.     Mr. Martin and Defendants intended to cause Ms. Vibe Ener to suffer emotional distress, or, in the alternative, Mr. Martin and or his agents engaged in the conduct with reckless

disregard of the high probability of causing Ms. Vibe Ener and her minor children and family members to suffer emotional distress.

99.    Ms. Vibe Ener suffered severe emotional distress and the outrageous conduct of Mr. Martin and his agents was a cause of the emotional distress suffered by Ms. Vibe Ener.

100.    Mr. Martin and his agents' outrageous conduct constitutes intentional infliction of emotional distress and is actionable under the laws of the State of Florida. Ms. Vibe Ener is entitled to compensatory and punitive damages in amounts to be ascertained at trial.

## COUNT V

## CIVIL CONSPIRACY

### (as to Defendant Pedro Antonio Martin and Does 1-10)

101.    The allegations common to all counts above are hereby incorporated herein by this reference.

102.    Defendants Mr. Martin and Does 1-10 formed a secret agreement to harm Ms. Vibe Ener by planning and effectuating a deliberate strategy to assassinate her character and reputation and force her out of her home and community, pursuant to which Mr. Martin (with Does 1-10's aid and encouragement) would disseminate false and defamatory publications, as well as private confidential personal information to the public, and which Mr. Martin (with Does 1-10's assistance) would initiate frivolous legal proceedings to harass, intimidate and injure Ms. Vibe Ener.

103.    Mr. Martin and Defendants effectuated the strategy by committing unlawful acts including, among other things, agreeing to commit perjury and fraud on the court, all to Ms. Vibe Ener's behest, in the Circuit Court of the 11th Judicial Circuit, Miami-Dade County, Florida Family Court and Domestic Violence Divisions.

104.    Ms. Vibe Ener has suffered damages as a direct and proximate result of the above-

Complaint

described unlawful conspiracy between Mr. Martin and Defendants Does 1-10.

105.   Ms. Vibe Ener is entitled to a judgment for monetary damages against Defendants Mr. Martin and Does 1-10 (jointly and severally) as a result of their unlawful conspiracy in an amount to be proved at trial.

106.   Ms. Vibe Ener is also entitled to punitive damages against Defendants Mr. Martin and Does 1-10 because they acted intentionally and willfully in so conspiring.

### COUNT VI

### ABUSE OF PROCESS

### (as to Defendant Pedro Antonio Martin and Does 1-10)

107.   The allegations common to all counts above are hereby incorporated herein by this reference.

108.   Defendants Mr. Martin and Does 1-10 willfully maliciously and intentionally committed perjury and fraud upon the court perverting the use of the legal process to terrorize and abuse Ms. Vibe Ener by initiating frivolous judicial proceedings against Ms. Vibe Ener, in the Circuit Court of the 11th Judicial Circuit, Miami-Dade County, Florida Family Court and Domestic Violence Divisions, to Ms. Vibe Ener's behest.

109.   Defendants Mr. Martin and Does 1-10 based their allegations on incompetent evidence lacking the legal requirement to substantiate a valid claim and or legal basis for relief. Further, said motions and requests for relief were filled with perjury before the court, and made for the sole purpose of harassing and terrorizing Ms. Vibe Ener.

110.   Ms. Vibe Ener has suffered damages as a direct and proximate result of the above-described malicious abuse of process by Defendants Mr. Martin and Does 1-10.

111.   Ms. Vibe Ener is entitled to a judgment for monetary damages against Defendants Mr. Martin and Does 1-10 (jointly and severally) as a result of their abuse of the legal process in

an amount to be proved at trial.

112.    Ms. Vibe Ener is also entitled to punitive damages from Defendants Mr. Martin and Does 1-10 as they acted intentionally and willfully in initiating legal proceedings and misusing the judicial process for the purpose of harassing Ms. Vibe Ener.

## CONCLUSION

Ms. Vibe Ener sues Mr. Martin, and Does 1-10, seeking injunctive relief and  damages in an amount of Two Hundred Million Dollars ($200,000.000.00) for the harm done to her, her family, and her business opportunities as the result of Mr. Martin's tortious conduct, vexatious  litigation, harassment, abuse of process, perjury, breach of his contractual obligations, defamation, invasion of privacy, and civil conspiracy.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff demands judgment against Defendants as follows:**

(1) For compensatory damages;

(2) For punitive and exemplary damages;

(3) For reasonable attorney's fees and costs of suit;

(4) For injunctive relief ordering Defendant to retract his false and defamatory statements made to Media outlets and restrict further defamation from being disseminated in the future by Defendants;

(5) For an order of specific performance, requiring Defendant to pay the amount of Two Hundred Million Dollars ($200,000,000.00).

(6) For any other and further relief as this Honorable Court may deem appropriate.

Complaint

Respectfully Submitted,

Dated:  April 18, 2019

JOHANNA MARIA VIBE ENER

Plaintiff In Propria Persona

Address:
61 Bridge Street Kington
Herefordshire HR5 3DJ
United Kingdom

Phone number: + 44 7937 268245

E-mail address:
victorvictoria888@protonmail.com

Complaint

## JURY TRIAL DEMAND

Plaintiff asserts her rights under the Seventh Amendment to the United States Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

Respectfully Submitted,

Dated: April 18, 2019

JOHANNA MARIA VIBE ENER

Plaintiff In Propria Persona

Address:
61 Bridge Street Kington
Herefordshire HR5 3DJ
United Kingdom

Phone number: + 44 7937 268245
E-mail address:
victorvictoria888@protonmail.com

Complaint